IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 24-146 |
| ) | |
| THOMAS JAMES CLARK ) | |

**MEMORANDUM OPINION**

Presently before the Court is Defendant Thomas James Clark's Motion to Dismiss Indictment, which is opposed by the Government. (Docket Nos. 33; 35 at 9-22; 38 at 3-15). After careful consideration of the parties' respective positions, the Court finds that all of Defendant's arguments for dismissal lack merit, thus his Motion will be denied.

**I.   BACKGROUND**

Defendant is charged in a one-count Indictment with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), for conduct occurring on or about January 20, 2024. (Docket No. 1). Defendant now moves to dismiss the Indictment, challenging the constitutionality of § 922(g)(1) following the Supreme Court's decision in *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1 (2022) and the Third Circuit Court of Appeals' decision in *Range v. Attorney Gen. of U.S.*, 124 F.4th 218 (3d Cir. 2024) (*Range II*). (*See generally* Docket Nos. 33, 38 at 3-15). In light of these decisions, Defendant contends the Government is unable to show that § 922(g)(1), as applied to him, is consistent with this Nation's historical tradition of firearm regulation. (Docket Nos. 33 at 11-13; 38 at 7-15). Additionally, Defendant argues that § 922(g)(1) is both unconstitutional on its face and unconstitutionally vague, and it also violates the Commerce Clause. (Docket No. 33 at 13-16).

The Government advocates that the Court should reject Defendant's as-applied constitutional challenge to § 922(g)(1). (*See* Docket No. 35 at 9-19). According to the Government, Defendant's Motion should be denied because he must show that his particular conduct was constitutionally protected, which he is unable to do because he did not possess the firearm for a lawful purpose. (*Id.* at 9-10, 12-13). Even if Defendant could overcome that hurdle, the Government maintains that § 922(g)(1) is constitutional as applied to him because he has been convicted of felonies that show him to pose a danger to society. (*Id.* at 12-19). The Government further contends that Defendant's facial challenge fails because he has not shown that § 922(g)(1) is unconstitutional in all circumstances. (*Id.* at 19). Finally, the Government submits that Defendant's vagueness and Commerce Clause arguments are without merit. (*Id.* at 20-22).

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), an alleged defect in the indictment "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B). "An indictment is defective if it alleges [a] violation of an unconstitutional statute." *United States v. Ho Ka Yung*, Crim. No. 17–14–LPS, 2018 WL 619585, at *1 (D. Del. Jan. 30, 2018) (quoting *United States v. Dean*, 670 F. Supp. 2d 457, 458 (E.D. Va. 2009) and citing *United States v. Boffa*, 513 F. Supp. 444, 459–64 (D. Del. 1980) (resolving motion to dismiss indictment where defendant alleged statute was unconstitutionally vague, overbroad, and unconstitutional as applied)).

In analyzing a Rule 12 motion to dismiss, the district court "must accept as true the factual allegations set forth in the indictment." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (abrogated on other grounds by *Rehaif v. United States*, 588 U.S. 225 (2019)). Although the

court's review generally is confined to the facts alleged in the indictment, *see United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011), the Third Circuit Court of Appeals has instructed that certain facts are critical when considering an as-applied challenge to § 922(g)(1) in the criminal context, including "the predicate offenses that made [the defendant] a felon" and "the circumstances of a criminal offense . . . regardless of whether they were charged." *United States v. Moore*, 111 F.4th 266, 272, 273 (3d Cir. 2024).[1] Against this legal standard, the Court considers Defendant's Motion.

### III. DEFENDANT'S AS-APPLIED CHALLENGE TO 18 U.S.C. § 922(g)(1)

The one-count Indictment charges that Defendant violated 18 U.S.C. § 922(g)(1), (*see* Docket No. 1 at 1-2), which makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). As stated, Defendant lodges several constitutional attacks on the Indictment, including that § 922(g)(1) is unconstitutional as applied to him in violation of the Second Amendment following *Bruen* and *Range II*. Conversely, the Government maintains that § 922(g)(1) is constitutional as applied to a person in Defendant's circumstances under the historical analysis set forth in those cases. The applicable decisional law interpreting the Second Amendment compels the Court to conclude that the Government is correct.

---

1   In *Moore*, the Court of Appeals rejected Moore's contention that only the facts alleged in the indictment could be considered in his as-applied challenge to § 922(g)(1). 111 F.4th at 272-73. As the Court of Appeals explained, an as-applied challenge requires a court to evaluate whether a statute's "application to a particular person under particular circumstances deprived that person of a constitutional right." *Id.* (quoting *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011)). Therefore, "[i]n order to mount a successful as-applied challenge, [Moore] must show that under these particular circumstances he was deprived of a constitutional right." *Id.* at 273 (quoting *Mitchell*, 652 F.3d at 406). "And 'these particular circumstances' include facts beyond the predicate offenses alleged in the indictment." *Id.*

A.  **Applicable Second Amendment Law**

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In *District of Columbia v. Heller*, 554 U.S. 570, 630, 635 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742, 767-68 (2010), the Supreme Court recognized that the Second and Fourteenth Amendments protect an individual's right to possess a handgun in the home for the "core lawful purpose of self-defense."  The Supreme Court stressed, however, that the right is not unlimited.  *Heller*, 554 U.S. at 595.  To illustrate, "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the [Second Amendment] right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Id.* at 626.  Accordingly, the Supreme Court instructed that "nothing in [*Heller*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."  *Id.* at 626-27.  Later, in *McDonald*, the Supreme Court reiterated that its holding in *Heller* did not cast doubt on such longstanding "prohibitions on the possession of firearms by felons," among other prohibitions.  *McDonald*, 561 U.S. at 786.

In *Bruen*, the Supreme Court held that the Second and Fourteenth Amendments protect "an individual's right to carry a handgun for self-defense outside the home."  *Bruen*, 597 U.S. at 10. In so ruling, the Court articulated the following history-based framework for determining whether a firearm regulation is constitutional under the Second Amendment:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate

> that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 17. As the Supreme Court explained, this framework "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26. When assessing present day firearms regulations, the historical analysis that courts must undertake "will often involve reasoning by analogy." *Id.* at 28. To that end, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30 (emphasis in original). In summary, although *Bruen* altered the analytical framework for addressing Second Amendment challenges, it did not displace *Heller* or *McDonald*, including *Heller's* admonition that nothing therein "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."[2] *See Heller*, 554 U.S. at 626.

More recently, in *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court reiterated that "the appropriate analysis" under *Bruen* "involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id.* at 692. Under this approach, "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Id.* at 691-92. Rather than pinpointing a perfect

---

[2] In concurring and dissenting opinions in *Bruen*, six Supreme Court Justices affirmed as much. *See Bruen*, 597 U.S. at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. . . . Nor have we disturbed anything that we said in *Heller* or *McDonald v. Chicago*, 561 U.S. 742 (2010), about restrictions that may be imposed on the possession or carrying of guns."); *see id.* at 81 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons. . . ."); *see id.* at 129 (Breyer, J., joined by Sotomayor, J., and Kagan, J., dissenting) (stating awareness that *Bruen's* holding has no impact on *Heller's* finding that banning felons from owning firearms is presumptively lawful).

statutory analogue, "dead ringer," or "historical twin," *id.* at 692 (quoting *Bruen*, 597 U.S. at 30), we are to draw on "relevantly similar" historical regulations to derive "principles underlying the Second Amendment" and then ask if the modern-day regulation "comport[s] with th[ose] principles" in terms of "why and how it burdens the Second Amendment right." *Id.* at 692, 698.

In light of these principles, the Supreme Court held that the challenged statute at issue in *Rahimi*, 18 U.S.C. § 922(g)(8), which prohibits firearm possession by individuals subject to a domestic violence restraining order, does not violate the Second Amendment facially or as applied to the facts of Rahimi's case. *Rahimi*, 602 U.S. at 693. As the Supreme Court explained, "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 690. Given that § 922(g)(8) applies to individuals found to threaten the physical safety of another, it "is 'relevantly similar' to those founding era regimes in both why and how it burdens the Second Amendment right." *Id.* at 698 (quoting *Bruen*, 597 U.S. at 29).

Finally, in *Range II*, the Third Circuit Court of Appeals addressed the constitutionality of 18 U.S.C. § 922(g)(1) as applied to Bryan Range, who had previously been convicted of making a false statement to obtain food stamps in violation of Pennsylvania law. *Range II*, 124 F.4th at 222-23. Range sought a declaration that § 922(g)(1) violates the Second Amendment as applied to him and requested an injunction prohibiting the law's enforcement against him. *Id.* at 223. Range asserted that but for § 922(g)(1), "he would 'for sure' purchase another deer-hunting rifle and 'maybe a shotgun' for self-defense at home." *Id.*

Applying the *Bruen* framework, the Court of Appeals ultimately determined in a "narrow" decision that § 922(g)(1) was unconstitutional as applied to Range. *Range II*, 124 F.4th at 232. In undertaking the historical analysis, the Court of Appeals reiterated that, post-*Bruen*, it is first

necessary to decide "whether the text of the Second Amendment applies to a person and his proposed conduct." *Id.* at 225 (citing *Bruen*, 597 U.S. at 31-33). If so, the Government bears the burden of proof to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* (quoting *Bruen*, 597 U.S. at 19).

As to the "threshold question" whether Range was one of the "the people" who have Second Amendment rights, the Court of Appeals concluded that he was, thereby rejecting the contention that "felons are not among 'the people' protected by the Second Amendment." *Range II*, 124 F.4th at 226, 228. Next, the Court of Appeals determined that § 922(g)(1) regulates Second Amendment conduct because Range's request to possess a rifle to hunt and a shotgun to defend himself at home tracks the constitutional right as defined by *Heller*. *Id.* at 228 (citing *Heller*, 554 U.S. at 582). Because Range and his proposed conduct are protected by the Second Amendment, the Court of Appeals then examined whether the Government met its burden to demonstrate that stripping him of his right to possess firearms is consistent with the Nation's historical tradition of firearm regulation and concluded that it had not done so. *Id.* at 228. Because the Government failed to show that "our Republic has a longstanding history and tradition of depriving people ***like Range*** of their firearms, [the Court of Appeals held that] § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." *Id.* at 232 (emphasis added).

### B. Section 922(g)(1) is Constitutional As Applied to Defendant

Before undertaking the analysis required by *Bruen*, it bears repeating that the Court "must accept as true the factual allegations set forth in the indictment." *Huet*, 665 F.3d at 595. Here, the Indictment alleges, and the Court accepts as true, the following: that on or about January 20, 2024, Defendant, knowing he previously had been convicted of certain crimes listed in the Indictment,

both of which are punishable by imprisonment for a term exceeding one year, knowingly possessed, in and affecting interstate commerce, a Rock Island Armory .38 revolver, bearing serial number RIA2213857, and various types of ammunition, in violation of 18 U.S.C. § 922(g)(1). (Docket No. 1 at 1-2).  As alleged in the Indictment, Defendant was previously convicted of operating a methamphetamine laboratory and criminal conspiracy, both in the Court of Common Pleas of Butler County, Pennsylvania.  (*Id.* at 1).

Moving on to application of *Bruen*'s framework to Defendant's case, the threshold question is whether Defendant is one of "the people" protected by the Second Amendment, despite having prior felony convictions.  *See Range II*, 124 F.4th at 226.  Given *Range II's* holding that felons may be among "the people" protected by the Second Amendment," *id.* at 228, the Government concedes that "Defendant is one of 'the people' under the Second Amendment."  (Docket No. 35 at 12).

The next question is whether the Second Amendment's plain text applies to Defendant's conduct.  *Bruen*, 597 U.S. at 17.  Defendant contends that it does because the conduct prohibited by § 922(g)(1)  - possession of a firearm – is protected by the Second Amendment.  (Docket No. 33 at 3, 11).  The Government disagrees that the Second Amendment applies to Defendant's particular conduct because he has not offered evidence that he possessed the firearm in question "for the only Second Amendment-protected purpose the Supreme Court has recognized: self-defense." (Docket No. 35 at 10).

On this point, the Court is mindful of *Heller's* and *McDonald's* recognition that the Second and Fourteenth Amendments protect an individual's right to possess a handgun in the home for the "core lawful purpose of self-defense," *Heller*, 554 U.S. at 630, 635; *McDonald*, 561 U.S. at 767-68, as well as *Bruen's* holding that the Second and Fourteenth Amendments protect "an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. at 10.

Later, in *Range II*, the Third Circuit Court of Appeals found that "the Second Amendment's plain text covers [Range's] conduct" because "Range's request – to possess a rifle to hunt and a shotgun to defend himself at home – tracks the constitutional right as defined by *Heller*." *Range II*, 124 F.4th at 228 (citations omitted). On the record before the Court, there is nothing to suggest that Defendant's conduct at issue involved possessing a handgun or shotgun for self-defense or a rifle for hunting. Nonetheless, in view of the Court of Appeals' statement in *Moore*, 111 F.4th at 269, that "the [§ 922(g)(1)] charge at issue punishes [the defendant] for quintessential Second Amendment conduct: possessing a handgun," the Court will assume for present purposes that Defendant's conduct at issue here is protected.

In that case, even if the Second Amendment protects Defendant's conduct, the Court finds that the Government sustained its burden of showing that § 922(g)(1) as applied to him is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. This is so because Defendant presented a special danger of misusing the firearm when he possessed it as alleged in the Indictment. As the Third Circuit Court of Appeals recently explained:

> [W]hile *Rahimi* and *Range II* did not purport to comprehensively define the metes and bounds of justifiable burdens on the Second Amendment right, they do, at a minimum, show that disarmament is justified as long as a felon continues to "present a special danger of misus[ing firearms]," *Rahimi*, 602 U.S. at 698, 144 S.Ct. 1889, in other words, when he would likely "pose[ ] a physical danger to others" if armed, *Range II*, 124 F.4th at 232.

*Pitsilides v. Barr*, 128 F.4th 203, 210 (3d Cir. 2025). In *Pitsilides*, the Court of Appeals observed that "some offenses may offer conclusive evidence that someone poses such a danger." *Id.* at 211. To that end, Judge Bibas previously noted "drug dealers," among others, may be disarmed "because their past crimes were inherently dangerous." *Folajtar v. Attorney Gen. of U.S.*, 980 F.3d 897, 922 (3d Cir. 2020) (Bibas, J., dissenting); *see also United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024) (holding that a person convicted of a crime is "dangerous," and thus can

9

be disarmed, if he has committed "a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary").

Here, Defendant's prior felony convictions alleged in the Indictment include operating a methamphetamine laboratory and criminal conspiracy. Given the nature of Defendant's drug-related convictions, Defendant presented a special danger of misusing firearms when he possessed the firearm listed in the Indictment. *See Pitsilides*, 128 F.4th at 213 (Although "residential burglary and drug dealing are not necessarily violent, they are dangerous because they often lead to violence.") (quoting *Folajtar*, 980 F.3d at 922 (Bibas, J., dissenting)); *see also United States v. Williams,* 2025 WL 1341877 at *2 (3d Cir. May 8, 2025) (holding that prior convictions for possession with intent to distribute cocaine and marijuana and child endangerment constitute a "dramatically different criminal record" than the plaintiff in *Range* for purposes of Second Amendment analysis); *United States v. Savery*, No. 24-551, 2025 WL 1165607, at *10 (D.N.J. Apr. 22, 2025) (holding that the defendant's multiple drug-trafficking convictions supported disarmament because those convictions showed the danger he posed to others if armed); *United States v. Trusty*, Crim. No. 20-543, 2025 WL 830124, at *4-5 (D.N.J. Mar. 17, 2025) (denying as-applied and facial challenges to § 922(g)(1); finding the defendant's four prior drug convictions showed his danger to the public's safety "because *drug dealing* is inherently dangerous" (emphasis in original)). Accordingly, Defendant's challenge to the constitutionality of § 922(g)(1) as applied to him fails.

## IV. DEFENDANT'S OTHER CHALLENGES TO 18 U.S.C. § 922(g)(1)

Defendant also argues that § 922(g)(1) is facially unconstitutional, it is unconstitutionally vague, and it violates the Commerce Clause. (Docket No. 33 at 13-16). These challenges to § 922(g)(1) provide no basis to dismiss the Indictment.

### A. Section 922(g)(1) Is Not Unconstitutional On Its Face

First, Defendant's facial challenge is unfounded. "A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (citation omitted). "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.' " *Mitchell*, 652 F.3d at 405 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Therefore, to prevail on his facial challenge to § 922(g)(1), Defendant must show that it "is unconstitutional in all of its applications." *Id.* (citation omitted). Defendant has failed to sustain this burden because § 922(g)(1) is not unconstitutional as applied in his case for reasons discussed above. Consequently, Defendant's facial challenge to § 922(g)(1) fails because he has not demonstrated that it violates the Second Amendment in all of its applications. *See United States v. Woznichak,* Crim. No. 21-242, 2023 WL 7324442, at *7 (W.D. Pa. Nov. 7, 2023) (citing *United States v. Blackshear*, Crim. No. 23-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) (rejecting facial challenge to § 922(g)(1) where the defendant "[could not] show that § 922(g)(1) is unconstitutional as applied to his case, let alone in all circumstances")).

### B. Section 922(g)(1) Is Not Unconstitutionally Vague

Defendant's vagueness challenge fares no better. A criminal statute is unconstitutionally vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citations omitted). "In the criminal context, the Supreme Court has held that since vagueness attacks are based on lack of notice, they may be overcome in any specific case where reasonable persons would know their conduct puts [them] at risk of punishment under the statute." *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir.

1992) (internal quotation marks and citation omitted). "Thus, to be constitutional, criminal statutes need only give 'fair warning' that certain conduct is prohibited." *Id.* (quoting *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)). In addition, "the Supreme Court has held that scienter requirements in criminal statutes 'alleviate vagueness concerns,' because a mens rea element makes it less likely that a defendant will be convicted for an action that he or she committed by mistake." *United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009) (citing *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007)).

Section 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). In this Court's estimation, the plain text of § 922(g)(1) clearly and unambiguously provides notice that those persons convicted of a felony or a felony equivalent are prohibited from possessing a firearm or ammunition. Moreover, § 922(g) requires proof that a defendant "knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 588 U.S. at 237. This knowledge requirement serves to further alleviate any vagueness concerns. *See Fullmer*, 584 F.3d at 152. For these reasons, the Court concludes that § 922(g)(1) does not fail to provide "fair notice of what is prohibited," and it is not unconstitutionally vague. *See Woznichak,* 2023 WL 7324442, at *8 (citations omitted).

### C. Section 922(g)(1) Does Not Violate the Commerce Clause

Finally, to preserve the argument, Defendant asserts that § 922(g)(1) is inconsistent with the original public meaning of the Constitution's Commerce Clause. (*See* Docket No. 33 at 16). Given that Defendant's Commerce Clause argument is foreclosed by existing precedent, *see United States v. Singletary*, 268 F.3d 196, 204-05 (3d Cir. 2001) (rejecting argument that Congress

exceeded authority given by Commerce Clause when enacting § 922(g)(1); *United States v. Penn*, 870 F.3d 164, 165 n.2 (3d Cir. 2017) (reaffirming *Singletary*), dismissal of the Indictment is not warranted on this basis.

## V.     CONCLUSION

The Court concludes that 18 U.S.C. § 922(g)(1) is constitutional both facially and as applied to Defendant, it is not unconstitutionally vague, and it does not violate the Commerce Clause.  Consequently, Defendant's Motion to Dismiss Indictment, (Docket No. 33), is DENIED.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date: July 31, 2025

cc/ecf:  All counsel of record